NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0661n.06

No. 11-5476

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 21, 2012*

LEONARD GREEN, Clerk

UNITED STEEL, PAPER AND FORESTRY, RUBBER,  )
MANUFACTURING, ENERGY, ALLIED INDUSTRIAL  )
AND SERVICE WORKERS INTERNATIONAL UNION,  )
AFL-CIO/CLC,                               )
                                          )
                                          )    ON APPEAL FROM THE
        Plaintiff-Appellee,               )    UNITED STATES DISTRICT
                                          )    COURT FOR THE EASTERN
v.                                        )    DISTRICT OF KENTUCKY
                                          )
AMERICAN STANDARD CORPORATION,            )
                                          )    OPINION
        Defendant-Appellant.              )
                                          )

Before: KEITH, MCKEAGUE, and DONALD, Circuit Judges.

DONALD, Circuit Judge. This appeal arises from a dispute over the arbitrability of a union

grievance regarding a separation pay provision in an expired collective bargaining agreement. The

district court determined that the grievance was arbitrable, and the defendant appealed. We

AFFIRM.

I.

In June 2005, Defendant-Appellant American Standard Corporation ("American Standard")

and Plaintiff-Appellee United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied

Industrial and Service Workers International Union, AFL-CIO/CLC ("the Union") entered into a

collective bargaining agreement ("the CBA"). The CBA covered American Standard employees at

its plant in Paintsville, Kentucky, and, per its provisions, terminated at 12:01 a.m. on July 1, 2008.

Two provisions of the CBA are at issue in this case.

The first provided separation pay to certain workers in the event that American Standard

closed the Paintsville plant. It stated that

> [i]n the event [American Standard] permanently and totally discontinue[s] operation
> of the plant, any employee having three (3) or more years of continuous service will
> receive separation pay at termination in accordance with the following schedule.

| Years of Continuous Service at Termination | Weeks of Separation Pay |
| --- | --- |
| 3 but less than 5 | 3 |
| 5 but less than 7 | 4 |
| 7 but less than 10 | 5 |
| 10 but less than 20 | 10 |
| 20 years or more | 15 |

The second provision established a four-step resolution process for employee grievances.

For purposes of this process, grievances were defined to include "any dispute between [American

Standard] and any employee of the Union concerning the application, interpretation, claim of breach,

or violation of the [CBA], including discharge, disciplinary suspension or disciplinary lay-off." The

final step of the process, which followed efforts to resolve the grievance by the employee and

American Standard, required the parties to submit the grievance to arbitration. While the arbitrator's

decision would be "final and binding upon all parties," the arbitrator's jurisdiction was limited to interpreting, applying, and determining compliance with the specified provisions of the CBA.

On April 18, 2008, American Standard, pursuant to the terms of the CBA, provided the Union with a letter giving sixty days notice of the expiration of the CBA, which reiterated that the CBA would terminate as planned at 12:01 a.m. on July 1, 2008. Between the issuance of the April 18 letter and the expiration of the CBA on July 1, American Standard announced that it was closing the Paintsville plant. American Standard and the Union then began negotiating the effects of the closure and the possibility of extending the CBA.

On September 23, 2008, American Standard offered to extend the duration of the terms of the CBA without the separation pay provision. The Union responded by filing a grievance on the issue. On October 15, 2008, American Standard closed the Paintsville plant without providing separation pay to any employees. On August 4, 2009, American Standard informed the Union that it would not agree to arbitrate the separation pay issue.

On December 4, 2009, the Union filed suit in federal court, pursuant to 29 U.S.C. § 185, seeking to compel American Standard to arbitrate the separation pay grievance. American Standard filed a motion to dismiss. On September 28, 2010, the district court denied the motion to dismiss, finding the grievance arbitrable. This timely appeal followed.[1]

---

[1]American Standard timely appealed the denial of the motion to dismiss, but we remanded for clarification as to the finality of the order denying the motion to dismiss. On March 31, 2011, the district court, noting that both parties conceded that there were no other issues to be decided,

II.

We review de novo a district court's determination that a labor dispute is subject to arbitration. *See Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 311 (6th Cir. 2000). Arbitration is a matter of contract, and a party cannot be required to submit a dispute to arbitration unless it has agreed to do so. *See AT & T Tech., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 648 (1986). However, "the fact that a collective bargaining agreement has expired does not mean that arbitration can no longer occur *under* it." *Cincinnati Typographical Union No. 3, Local 14519, Comm. Workers of Am. AFL-CIO v. Gannett Satellite Info. Network, Inc.*, 17 F.3d 906, 909 (6th Cir. 1994) (citing *Nolde Bros., Inc. v. Bakery Workers*, 430 U.S. 243, 250-52 (1977)) (emphasis in original). When an expired agreement includes an arbitration provision, there is a presumption that disputes over a provision of that agreement are arbitrable unless "negated expressly or by clear implication." *Nolde Bros.*, 430 U.S. at 255.

In *Nolde Bros.*, the Supreme Court addressed whether a dispute over a severance pay provision in an expired collective bargaining agreement was subject to the arbitration provision of the same expired agreement. Based on a two-step process, the Court in *Nolde Bros.* found the dispute arbitrable. First, the Court examined the nature of the dispute, pointing out that it involved a provision that would have been subject to arbitration had the grievance arisen during the term of

---

made clear that the original order was final and appealable. American Standard then timely filed the notice of appeal presently before us.

the agreement.  430 U.S. at 249.  Accordingly, the Court found that the dispute over the severance

pay provision "clearly [arose] *under* that contract." *Id.* (emphasis in original).  Second, after finding

that the dispute arose under the agreement, the Court considered whether the duty to arbitrate

survived expiration of the agreement.  Noting that the parties agreed to submit all disputes under the

agreement to arbitration, the Court held that, absent an express or clearly implied provision stating

that the arbitration provision expired with the agreement, there was a presumption of arbitrability

for all such disputes.  *Id.* at 255.  After *Nolde Bros.*, a dispute would be arbitrable even after

expiration of the underlying agreement so long as 1) the dispute arose under the contract and 2) the

contract did not limit post-expiration arbitration.

In a subsequent case concerning a layoff provision in an expired agreement, the Supreme

Court clarified the holding of *Nolde Bros.*, explaining that it should not be interpreted as standing

for a broad rule that "postexpiration grievances concerning terms and conditions of employment

remain arbitrable." *Litton Fin. Printing, Div. v. NLRB*, 501 U.S. 190, 205 (1991).  Instead, the

presumption of post-expiration arbitration applies "only where the dispute has its real source in the

contract." *Id.*  Whereas the *Nolde Bros.* Court asked generally whether the dispute would have been

arbitrable if it had arisen during the course of the agreement, the *Litton* Court established more

restrictive boundaries for when a dispute arises under a contract:

> [a] postexpiration grievance can be said to arise under the contract only where it
> involves facts and occurrences that arose before expiration, *where an action taken*
> *after expiration infringes a right that accrued or vested under the agreement*, or

> where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

*Id.* at 205-206 (emphasis added). Only the second example from *Litton* is at issue here.[2] Therefore, because the CBA does not expressly or by clear implication limit the arbitration provisions to the duration of the agreement, the dispute between the Union and American Standard is arbitrable if the rights created by the separation pay provision accrued or vested during the term of the CBA.

In determining whether the separation pay right accrued or vested under the agreement, we may look to the terms of the CBA to decide whether the parties agreed to arbitrate the issue. *Id.* at 209 ("[W]e must determine whether the parties agreed to arbitrate this dispute, and we cannot avoid that duty because it requires us to interpret a provision of the bargaining agreement."); *see also Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers of America, Local Union 1199 v. Pepsi-Cola Gen. Bottlers, Inc.*, 958 F.2d 1331, 1333 (6th Cir. 1992) ("In the context of an expired collective bargaining agreement, however, the Court must determine whether the parties intended to arbitrate the dispute, even if it requires the Court to interpret a provision of the expired agreement."). In other words, we may touch upon the merits of the underlying dispute in order to decide the arbitrability question. *See Paper, Allied-Indus. Chem. and Energy Workers Int'l Union,*

---

[2]In its brief, the Union also asserts that the dispute arguably arose before the expiration of the CBA because American Standard announced the shutdown of the Paintsville plant before the CBA expired. This argument is not properly before us as the Union did not raise it before the district court. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) ("an argument not raised before the district court is waived on appeal to this Court.").

*No. 11-5476*
*United Steel Int'l Union v. Am. Standard Corp.*

*Local 4-12 v. Exxon Mobil Corp.*, 657 F.3d 272, 277 & n.14 (5th Cir. 2011). Upon review of the CBA provisions at issue, we need not determine the merits of the underlying grievance—whether the Union employees were entitled to separation pay after the closure of the Paintsville plant. Instead, we conclude only that the separation pay rights *accrued* during the term of the CBA, meaning the dispute is subject to arbitration.

While there is little case law clearly delineating when a right accrues under a contract, several cases provide some guidance for our conclusion that the separation pay right here accrued under the CBA. In *Nolde Bros.*, the union characterized the severance pay that employees accrued over time as deferred compensation to be paid only upon termination. 430 U.S. at 248. The *Litton* Court used this view of the severance pay in *Nolde Bros.* for comparative purposes when determining whether the provision at issue there—a layoff order based on the length of continuous service assuming other things like aptitude and ability were equal—accrued or vested under the relevant contract. Noting that the provision was not comparable to the provision in *Nolde Bros.*, the *Litton* Court explained:

> The important point is that factors such as aptitude and ability do not remain constant, but change over time. They cannot be said to vest or accrue or be understood as a form of deferred compensation. Specific aptitudes can either improve or atrophy. And the importance of any particular skill in this equation varies with the requirements of the employer's business at any given time. Aptitude and ability cannot be measured on some universal scale, but only by matching an employee to the requirements of an employer's business at that time.

501 U.S. at 210. Attributes that suggest a right has accrued include factors that remain constant, that cannot improve or atrophy, and that can be measured on a universal scale.

Similarly, we have previously stated, albeit in *dicta*, that

> There are . . . certain types of rights that courts presume to be "accrued or vested" without any other evidence in the contract. These are rights that can be worked toward or accumulated over time. . . . Severance pay is usually a right that accrues and vests over time, as per *Nolde Bros.* for the longer a person works, the more pay accrues. . . . The nature of the right at issue here is not one that we presume to be vested. Employees do not accrue it step-by-step as they work for the employer, like the severance pay in *Nolde Bros.* Rather, the right is a bargained-for worker protection, like the rights not to be discharged that were at issue in *Litton* and [its progeny].

*Cincinnati Typographical Union*, 17 F.3d at 911 (citation omitted). The district court in this case seized upon the presumption language in *Cincinnati Typographical Union*, observing that this case "involves a right to separation pay which is a right that is presumed to be vested or accrued." Because *Litton* holds that the accrual of a right depends on the language of the provision creating the right, we do not agree with the suggestion that *any* right to separation pay presumptively vests or accrues. Nonetheless, *Cincinnati Typographical Union* does offer another example of how a right can accrue—when it is worked-for or accumulated over time or grows step-by-step.

Moreover, the First Circuit has described an accrued benefit as one that is "objectively quantifiable." *United Parcel Serv., Inc. v. Unión de Tronquistas de Puerto Rico, Local 901*, 426 F.3d 470, 473 (1st Cir. 2005). "[T]he vacation benefit accrued according to a specific formula . . . Vacation time strikes us as the classic example of a benefit that—barring explicit provision to the contrary—accrues during the term of the agreement under which it was earned." *Id.* at 473-74.

The severance pay right described in the CBA meets each of these prescriptions for accrual under the agreement. The determination of the right is objectively quantifiable based on a specific formula that considers only the number of years of continuous service the employee has had with American Standard. The length of employment is a universal scale that remains constant across all employees. Likewise, the separation pay right accumulated step-by-step; the more years an employee worked, the more pay he was entitled to. Considering these factors, we conclude that the separation pay right in the CBA accrued under the CBA.

American Standard, relying on *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000 (6th Cir. 2008), argues that the severance pay provision did not vest during the term of the CBA because a precondition for the benefit—the closure of the plant—did not occur until after the CBA expired. *Litton*, however, only requires that the right at issue accrue *or* vest under the agreement. Having determined that the right under the separation pay provision accrued under the CBA, we need not determine whether it also vested. It is possible that the severance right here did not vest under the CBA and that the employees are not entitled to that benefit, but that is an issue of contract interpretation that the parties agreed to submit to arbitration. *See Unión de Tronquistas*, 426 F.3d at 474 ("Having concluded that the employees' right to vacation time accrued under the earlier agreement and, consequently, that the underlying dispute arises under the agreement, we must assign substantive resolution of the dispute to the arbitrator. . . .").

III.

In sum, we are convinced that the right to receive separation pay accrued under the CBA. Therefore, under the *Litton* standard, the grievance arose under the CBA, making it subject to the CBA's arbitration provisions. For these reasons, we AFFIRM the judgment of the district court.